

# THE ATTORNEY GENERAL
## OF TEXAS

February 17, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Dudley Harrison
Chairman
Agriculture and Livestock
  Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas  78769

Opinion No.  (JM-858)

Re:  Responsibility of a hospital district to provide medical care for the needy inhabitants of the district and related questions (RQ-1199)

Dear Representative Harrison:

You have asked several questions regarding the responsibility of a hospital district to provide medical care for the needy inhabitants of the district. You pose three questions regarding the Presidio County Hospital District, which we restate as follows:

> 1.  What are the definitions of 'needy' and 'inhabitant of the district' as those terms are used in the constitutional and statutory provisions applicable to the Presidio County Hospital District?

> 2.  Who sets the standards to determine whether someone is 'needy'?

> 3.  May the Presidio County Hospital District fund capital expenditures for a hospital located outside the district?

The Presidio County Hospital District is a countywide hospital district created under authority of article IX, section 9, of the Texas Constitution. Acts 1965, 59th Leg., ch. 643, at 1455. See V.T.C.S. art. 4494q. Article IX, section 9, of the Texas Constitution provides in part:

> The Legislature may by law provide for the creation, establishment, maintenance and operation of hospital districts . . . with power to issue bonds for the purchase, construction, acquisition, repair or renovation of buildings and improvements and equipping same, for hospital purposes . . .

> providing that any district so created shall assume full responsibility for providing medical and hospital care for its needy inhabitants . . . providing that after its creation no other municipality or political subdivision shall have the power to levy taxes or issue bonds or other obligations for hospital purposes or for providing medical care within the boundaries of the district. . . .

The statute creating the Presidio County Hospital District provides in part:

> Sec. 3. The District authorized to be created by this Act is charged with the responsibility of establishing a hospital or a hospital system within its boundaries to furnish hospital and medical care to the residents of the District. . . . This District shall provide all necessary hospital and medical care for the needy inhabitants of the District.

Acts 1965, 59th Leg., ch. 643, at 1455.

Other relevant constitutional and statutory provisions are found in article IX, section 9A, of the Texas Constitution and the Indigent Health Care and Treatment Act (article 4438f, V.T.C.S.).

The Indigent Health Care and Treatment Act (the act) provides for the medical care and treatment of indigents. Definitions of residency and procedures for resolving residency disputes are governed by sections 1.03 and 1.04 of the act. Section 1.05(b) of the act prohibits a hospital district from denying or reducing medical assistance to an eligible resident due to the person's inability or refusal to contribute to the cost of the assistance rendered.

According to the act, a hospital district must provide the health care services required under the Texas Constitution and the statute creating the district, and a hospital district is liable for such services as may be required by the constitution and its enabling statute. Secs. 11.01 and 12.01(b). A hospital district may arrange to provide health care services through another health care provider. Sec. 11.03(a). A hospital district may also affiliate with other public hospitals or hospital districts or with a governmental entity to provide

regional administration and delivery of health care services. Sec. 11.03(b).

The Texas Constitution was amended by adding article IX, section 9A, in 1985 to permit the legislature to determine the health care services a hospital district must provide, the requirements a resident of the district must satisfy to qualify for service, and any other provisions necessary to regulate health care to hospital residents. However, no legislation has been adopted pursuant to this constitutional amendment.

Your first question concerns the meaning of the terms "needy" and "inhabitant of the district" as those terms are used in the pertinent constitutional and statutory provisions. This office addressed this question in Attorney General Opinion H-703 (1975). That opinion equated a "needy inhabitant" with an "indigent resident." Indigency, the opinion noted, cannot be translated into precise income levels without resolving factual matters. Such a determination is not appropriate to the opinion process. Since the enactment of the Indigent Health Care Act, hospital districts have been provided with necessary guidelines to determine residency within the hospital district. V.T.C.S. art. 4438f, §§1.03, 1.04.

The answer to your second question was also addressed in Attorney General Opinion H-703. The opinion stated that the initial determination of indigency is to be made by the hospital district. Section 14 of the district's enabling statute provides:

> Sec. 14. A person who resides within the District is entitled to receive necessary medical and hospital care whether he has the ability to pay for the care or not. The Board shall by rule or regulation adopt a procedure for determining the ability of a patient to pay for his medical and hospital care and for determining the amount each patient shall be required to pay.

Acts 1965, 59th Leg., ch. 643, at 1460. Additional guidance for the district in determining a resident's indigent status is offered by section 1.06 of the Indigent Health Care Act. While this provision is not applicable to a hospital district, it may be useful to the district in establishing its own eligibility standards.

Finally, you inquire about the authority of the Presidio County Hospital District to make capital

expenditures for a hospital located outside of the district's boundaries. As we understand it, no hospital facilities have been established within the boundaries of the Presidio Hospital District since its creation approximately twenty years ago. We note that the creation of the district triggered the constitutional and statutory prohibition against a municipality or political subdivision within the district levying a tax or issuing bonds for the purpose of providing medical care services within the district's boundaries. See Tex. Const. art. IX, §9; Acts 1965, 59th Leg., ch. 643, §3, at 1455.

Presidio County Hospital District has an absolute obligation to provide medical services, but the district has failed to establish the facilities within its boundaries to accomplish this duty. Rather, residents of Presidio County travel to a hospital that is operated by another hospital district in an adjacent county to receive medical treatment. The district is liable for the medical expenses of its indigents. Attorney General Opinion Nos. JM-540 (1986); JM-487, JM-257 (1984); H-703 (1975); M-171 (1967).

The Presidio County Hospital District is now being asked by the other hospital district to assist in funding construction and repairs of its facility. Standing alone, the Presidio County Hospital District's enabling legislation appears to limit the use of taxes collected by the district to the purposes enumerated in sections 3 and 9 of the enabling statute. Providing funding for capital improvements for a hospital located outside the district would not appear to come within the prescribed uses for the district's taxes. However, the district's enabling legislation must be read and harmonized, if possible, with the later adoption of the Indigent Health Care and Treatment Act. In accordance with section 11.03 of the Indigent Health Care and Treatment Act, a hospital district "may affiliate with other public hospitals or hospital districts or with a governmental entity to provide regional administration and delivery of health care services." Identical authorization for affiliation by counties is provided by section 3.02(b) of the act.

To "affiliate" means to associate as a member. Webster's Ninth New Collegiate Dictionary 61, (1985). Thus, the legislature, in enacting a comprehensive scheme for the delivery of medical care to the state's indigent residents, recognized the disparities in available facilities throughout the state. To assist the affected governmental entities which are required to provide

indigent health care, the legislature authorized regional service among the affected entities.

In our opinion, this authority to affiliate contemplates a broad range of possible agreements between the entities involved. We cannot say that an affiliation that results in one hospital district funding capital expenditures for a second hospital district in exchange for the provision of health care services is beyond the scope of arrangements intended by the legislature. In our opinion, therefore, section 11.03 of the Indigent Health Care and Treatment Act authorizes the Presidio County Hospital District to affiliate with a neighboring hospital district in a manner that allows Presidio District to fund construction and repairs for the second district's agreement to provide medical care to the needy inhabitants of Presidio County.

## S U M M A R Y

The terms "needy" and "inhabitant" found in Texas Constitution article IX, section 9, and in the enabling legislation for the Presidio County Hospital District are equivalent to the terms "indigent" and "resident."

Absent legislative action pursuant to article IX, section 9A, of the Texas Constitution establishing eligibility requirements, the Presidio County Hospital District must determine whether a county resident is indigent.

Presidio County Hospital District may affiliate with another hospital district to provide medical care to the needy inhabitants of Presidio County. The agreement between the affiliating entities may provide for Presidio County Hospital District to fund capital expenditures for the other hospital district.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General